## Richmond

RELIANCE INSURANCE COMPANIES V. ANNIE A. DARDEN
AND PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY.

March 4, 1977.

Record No. 760391.

Present, All the Justices.

*Edward L. Breeden, III (Breeden, Howard & MacMillan,* on brief), for appellant.

*Richard D. Mattox (Mattox, Sondej, Young and Whitlow,* on brief), for appellee.

No brief for Annie A. Darden, appellee.

I'ANSON, C.J., delivered the opinion of the court.

Plaintiff, Annie A. Darden, filed this declaratory judgment suit in the court below to determine which of two insurers, Reliance Insurance Companies (Reliance) or Pennsylvania National Mutual Casualty Insurance Company (Pennsylvania National) was liable for payment of a judgment previously obtained by her in the amount of $17,500. The trial court decreed that the "Out-of-State Insurance Endorsement" on Reliance's policy was ambiguous and under familiar principles of

construction that company was liable for the entire amount of the judgment, less a credit of $4,350 it had already paid plaintiff.

On August 12, 1973, plaintiff was a passenger in an automobile driven by Flint Faulkner in the city of Chesapeake when it was in collision with a car owned and operated by James E. Lawrence, a resident of Beaufort, North Carolina. Lawrence and his passenger were killed, and plaintiff and Faulkner were injured.

The vehicle driven by Lawrence was covered by a policy of automobile liability insurance issued by Reliance. The liability limits on the policy were $10,000 per person and $20,000 per accident. The Faulkner automobile was covered by a liability policy issued by Pennsylvania National. The policy was issued in Virginia, and it contained the standard uninsured motor vehicle endorsement.

Reliance paid $10,000 to the estate of Lawrence's passenger, and $5,695 to Faulkner. Thereafter, plaintiff obtained a consent judgment against the Lawrence estate for $17,500, and Reliance paid the balance of its alleged coverage of $4,350 on the judgment. The consent order provided *inter alia* that Reliance and Pennsylvania National would not plead release as a defense in this case.

The "Out-of-State Endorsement" (Endorsement) on Reliance's policy reads as follows:

"If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of the motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. . . ."

Reliance contends that the plain and clear language of the endorsement is to increase coverage only if "a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle" in a foreign state, and if "such insurance requirements are greater than insurance provided by the policy" then the limits of the liability and kinds of coverage afforded by the policy shall be as set forth in the law of such foreign state "but only to the extent required by such law."

Hence, the question presented is whether there were any provisions of Virginia law which required Lawrence to maintain automobile liability coverage limits in excess of $10,000 per person and $20,000 per accident on the day of the accident, August 12, 1973. If there were such a requirement, it would be found in the appropriate chapters of Title 38.1 or Title 46.1 of the Code.

We find nothing in Title 38.1 which requires any motorist, whether a resident or non-resident of Virginia, to have any automobile liability insurance as a condition to operate or use a motor vehicle in Virginia, and nothing therein requires those who elect to purchase insurance to have any minimum coverage.

Virginia is not a compulsory motor vehicle liability insurance state. Rather, it has pioneered in the area of uninsured motorist law.

Upon registration of a motor vehicle in Virginia, Code § 46.1-167.1, as amended, requires the payment of an uninsured motorist fee of $100 (now $150), if the registrant has insufficient or no insurance coverage. But the statute does not require liability insurance before a motor vehicle can be operated or used in Virginia.

Although Virginia's Motor Vehicle Safety Responsibility Act provisions (Code §§ 46.1-388 to 46.1-514), as amended, are made applicable to non-residents under the same circumstances as its provisions would apply to a resident by Code § 46.1-463, the provisions of the statutes only apply to those who are required to furnish proof of financial responsibility. Code § 46.1-393(a). Policy limit schedules of $20,000 per person and $40,000 per accident appear in Code §§ 46.1-1(8) and 46.1-504(c), as amended,[1] and the statute applies solely to policies certified to

---

1. The 1975 amendments, effective January 1, 1976, substituted $25,000 for $20,000 and $50,000 for $40,000.

the Commissioner of Motor Vehicles as proof of financial responsibility. Code § 46.1-509. The provisions of the Act have no application to policies voluntarily procured. *Farm Bureau Mut. Automobile Ins. Co.* v. *Hammer,* 177 F.2d 793, 796 (4th Cir. 1949) (*cert. denied,* 339 U.S. 914). *Stillwell* v. *Iowa Nat'l. Mutual Ins. Co.,* 205 Va. 588, 592-93, 139 S.E.2d 72, 75-6 (1964). *See State Farm Mut. Auto Ins. Co.* v. *Arghyris,* 189 Va. 913, 930-31, 55 S.E.2d 16, 24 (1949).

The meaning of "proof of financial responsibility" is defined as ability to respond in damages for liability *thereafter incurred* arising out of the operation or use of the vehicle in certain specified amounts, and this proof, when required, may be established by evidence that a policy of motor vehicle liability insurance has been obtained and is in full force and effect. Code § 46.1-1(8), as amended. *See also* Code § 46.1-468.

The scheme of the Act, so far as pertinent here, is to afford sanctions against any person whose operation of a motor vehicle has resulted in injuries or property damages to others unless he satisfies judgments against him for damages arising out of the operation of the vehicle and also proves in the manner provided by the Act that he is financially able to respond in damages for an accidental injury or property damages that may subsequently occur.

Nowhere in the Act do we find that a person, whether a resident or non-resident, is required to carry motor vehicle liability insurance in order to operate a vehicle in this state until after he has first had an accident and thereby been brought within the application of the Act. *See also* Annot. "Liability Insurance — First Accident," 8 A.L.R.3d 388 (1966) and the numerous cases cited from states having similar motor vehicle financial responsibility laws.

In the present case, the policy was voluntarily obtained by Lawrence. The record does not show that he was ever required to furnish proof of financial responsibility under the Virginia Act, and the Reliance policy was not certified under the requirements of Code § 46.1-509. The Act protects the victim against the automobile owner's second accident. Since, at least as far as the record shows, the accident of August 12, 1973 was Lawrence's first accident, the Act was not applicable to him.

We find nothing ambiguous in the endorsement. It clearly

states that coverage is enlarged beyond the limits set forth in the policy if the policyholder had to maintain insurance as a condition of the operation and use of the motor vehicle in a foreign state under that state's motor vehicle financial responsibility laws. Since Lawrence was not required to maintain insurance under Virginia's motor vehicle financial responsibility act at the time of the accident, the Act had no application here, and the endorsement did not enlarge the coverage under the policy. Hence, Reliance's limit of liability under its policy was $20,000, and it was error to hold that it was liable for the balance due on plaintiff's judgment.

The trial court's decree provided that if the judgment against Reliance should be reversed on appeal, "then the judgment shall be collectable against Pennsylvania National." This portion of the decree is not in issue. Accordingly, because we reverse the judgment against Reliance, we here enter judgment in favor of the plaintiff against Pennsylvania National in the amount of $13,150.

> *Reversed as to Reliance and final judgment entered against Pennsylvania National.*