Joseph C. **BRAY**, Plaintiff,

v.

**INSURANCE COMPANY OF the STATE OF PENNSYLVANIA and Nationwide Mutual Fire and Insurance Company,** Defendants.

Civ. A. No. 88–112–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 3, 1989.

Thomas S. Carnes, Richard N. Shapiro, Guy, Cromwell, Betz, & Lustig, P.C., Virginia Beach, Va., for plaintiff.

Paul D. Fraim, Henry W. Austin, Jr., Heilig, McKenry, Fraim and Lollar, Norfolk, Va., for Nationwide Mut.

Ralph Boccarosse, Jr., Fairfax, Va., for Ins. Co. of the State of Pa.

## MEMORANDUM OPINION AND ORDER

DOUMAR, District Judge.

This action concerns insurance coverage available to the operator of a tractor-trailer involved in a collision with an automobile on March 9, 1986 in Seaford, Delaware. The plaintiff in this action was operating a 1977 White Road Commander tractor which was pulling a trailer containing freight being shipped by the plaintiff's employer, U.S. Lines Trucking. The tractor-trailer was operating under lease to U.S. Lines Trucking at the time of the accident.

In this accident, the operator of the automobile was killed and a passenger in the automobile was injured. The plaintiff also sustained personal injuries. The plaintiff's medical expenses and lost wages exceed the amount of liability coverage of both the owner and the operator of the automobile allegedly at fault in the accident. An action by the plaintiff against the owner and operator of the automobile has been stayed pending decision in this case.

The plaintiff instituted this declaratory judgment action[1] against Nationwide Mutual Fire and Insurance Company (Nationwide), the underwriter of an insurance policy insuring three personal vehicles with the plaintiff as the named insured, and against the Insurance Company of the State of

---

1. Jurisdiction is predicated upon diversity of citizenship.

Pennsylvania (Pennsylvania Insurance), the underwriter of a liability policy with U.S. Lines Trucking as the named insured. The plaintiff seeks a declaration that he has a right to pursue the contractual underinsurance coverage on each of the three vehicles insured by Nationwide and that he has a right to pursue statutory underinsurance coverage against Pennsylvania Insurance in the amount of $1 million, subject to a determination of the primary, secondary, or pro rata underinsurance coverage of these underwriters.

## I. FINDINGS OF FACT

1. The plaintiff, Joseph C. Bray, is a domiciliary and resident of Virginia Beach, Virginia. Defendant Pennsylvania Insurance is a corporation organized under the laws of New York, with its principal place of business in New York, New York. Pennsylvania Insurance is licensed to transact business within the Commonwealth of Virginia. Defendant Nationwide is a corporation organized under the laws of Ohio, with its principal place of business in Columbus, Ohio. The amount in controversy in this action exceeds $10,000.00, exclusive of interest.

2. On June 28, 1985, the plaintiff and U.S. Lines Trucking executed a lease agreement whereby the plaintiff's tractor would be leased to U.S. Lines Trucking and the plaintiff would drive the tractor on dispatch by U.S. Lines Trucking. The lease was for thirty days and automatically renewed itself unless either party gave notice prior to its renewal. On July 7, 1985, U.S. Lines Trucking notified the plaintiff that he had been approved as a driver. On July 8, 1985, the plaintiff received his first dispatch. Between June 28, 1985, and March 9, 1986, the plaintiff was the title owner of the tractor, under a Virginia title. During this period, the tractor was garaged at the plaintiff's home in Virginia Beach, Virginia.

3. U.S. Lines Trucking was an interstate trucking company engaged in the business of transporting property. U.S. Lines Trucking's principal place of business was in the state of New Jersey. At all times relevant to this action, U.S. Lines Trucking was duly licensed pursuant to Interstate Commerce Commission (ICC) regulations as well as pursuant to Virginia State Corporation Commission regulations.

4. The lease agreement between the plaintiff and U.S. Lines Trucking provided that while the plaintiff's tractor was in the service of U.S. Lines Trucking, U.S. Lines Trucking would maintain insurance coverage for the protection of the public pursuant to ICC regulations under 49 U.S.C. section 10927 and that the plaintiff would carry adequate insurance coverage on the tractor, including but not limited to Bobtail (running without a trailer) insurance, and to pay the premiums on this insurance. The plaintiff did not carry liability or any other insurance on the tractor to insure the tractor while not operating under dispatch by U.S. Lines Trucking. The plaintiff maintained his own tractor and kept it at his home when not on dispatch.

5. On March 9, 1986, the plaintiff was operating his tractor on Route 13 within the City of Seaford, Delaware. The tractor was pulling a semi-trailer bearing freight being shipped for U.S. Lines Trucking. The trailer was owned by U.S. Lines Trucking and was principally garaged in Virginia on July 16, 1985. Joseph C. Bray, the plaintiff, was operating the tractor-trailer under dispatch by U.S. Lines Trucking in interstate commerce.

6. While proceeding down Route 13, in Seaford, Delaware, an automobile operated by Carrie King pulled onto Route 13 in the path of the oncoming tractor-trailer which had come from Norfolk, virginia. The right front of the tractor struck the automobile which then turned and struck the right side of the tractor. Carrie King died as a result of injuries sustained in the accident. Ralph Bradley, a passenger in and the owner of the automobile, and Joseph C. Bray, the plaintiff, sustained a serious personal injury in the accident.

7. At the time of the accident, King was the named insured on a liability policy providing coverage of up to $25,000 per person, $50,000 per accident. Bradley was the named insured on a policy providing liabili-

ty coverage of up to $25,000 per person, $50,000 per accident. Both of their insurers have stated that they are "ready, willing, and able" to offer their policy limits. The plaintiff alleges that as a result of the injuries he sustained in the accident, his lost income alone exceeds $75,000.

8. At the time of the accident, U.S. Lines Trucking was the named insured on a liability policy underwritten by defendant Pennsylvania Insurance. The policy provided liability coverage of up to $1 million pursuant to statute and ICC regulations. The policy contained an uninsured/underinsured motorist endorsement with limits of liability specified as $15,000 per person, $30,000 per accident for bodily injury and $5,000 per accident for property damage. The policy was issued or renewed on July 16, 1985 from a New York brokerage firm and was delivered to U.S. Lines Trucking's principal place of business in New Jersey. The policy's expiration date was July 15, 1986.

9. At the time of the accident, the plaintiff was the named insured on an automobile liability policy underwritten by defendant Nationwide. This policy listed three vehicles with uninsured/underinsured motorist coverage of $25,000 per person, $50,000 per accident on the first vehicle; $100,000 per person, $300,000 per accident on the second vehicle; and $25,000 per person, $50,000 per accident on the third vehicle. The policy was effective from December 23, 1985 through July 8, 1986.

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to the diversity of citizenship statute, 28 U.S.C. section 1332.

2. The U.S. Lines Trucking Pennsylvania Insurance policy does not extend uninsured/underinsured motorist coverage to the plaintiff's tractor, a non-owned vehicle to the named insured.

3. The Virginia uninsured motorist statute does not impute uninsured/underinsured motorist coverage to the plaintiff's tractor or to the plaintiff as a permissive user of a vehicle not owned by the named insured.

4. The U.S. Lines Trucking trailer is not a covered vehicle as that term is defined by the Pennsylvania Insurance policy for uninsured/underinsured motorist coverage. For purposes of uninsured/underinsured motorist coverage, the Pennsylvania Insurance policy defines covered vehicles to be only those vehicles owned by the named insured that are licensed or principally garaged in states whose law requires and does not permit rejection of uninsured motorist coverage. Virginia law did not "require" any insurance on the trailer at all. However, Virginia law did require uninsured motorist coverage in the liability policy written on the U.S. Lines Trucking trailer which was principally garaged in Virginia at the time the liability policy was issued or renewed. This uninsured motorist coverage is not available to the plaintiff as the automobile struck by the tractor driven by the plaintiff was not "uninsured" as that term is defined by the Virginia uninsured motorist statute and by the Pennsylvania Insurance policy.

5. The Pennsylvania Insurance policy does not provide underinsured motorist coverage by operation of the Virginia uninsured motorist statute because the statute requires underinsured motorist coverage only when the named insured has purchased greater liability coverage than that required by law and U.S. Lines Trucking did not purchase such coverage.

6. The underinsurance coverages on three vehicles owned by the plaintiff and insured under one policy by Nationwide cannot be "stacked" because the Nationwide policy clearly and unambiguously excludes stacking coverages of multiple vehicles insured under the policy. The maximum underinsurance coverage available to the plaintiff under the Nationwide policy is $100,000.

## III. DISCUSSION

In analyzing the underinsured motorist coverage available to the plaintiff, the question of coverage by Pennsylvania Insurance on the plaintiff's tractor will be considered first, followed by an examina-

tion of any coverage on the U.S. Lines Trucking trailer. Finally, the question of "stacking" coverages under the plaintiff's Nationwide policy will be addressed.

### A. The Pennsylvania Insurance Policy

The plaintiff and Pennsylvania Insurance do not dispute that when but only when the plaintiff was operating his tractor under dispatch by U.S. Lines Trucking, the tractor was a "covered auto" under the Pennsylvania Insurance policy for purposes of liability coverage. Agreement evaporates, however, when uninsured/underinsured motorist coverage is addressed. The plaintiff did not purchase any liability insurance for his tractor. He seeks to have the liability insurance policy purchased by the non-owner of the tractor construed to provide him with underinsured motorist coverage while he was operating the tractor. The plaintiff also seeks to have this liability insurance policy covering the trailer construed to provide him with underinsured motorist coverage in the same amounts as the liability insurance thereon.

Because the Pennsylvania Insurance policy defines "auto" for purposes of coverage, *see* Plaintiff's Exhibit C to Motion in Support of Summary Judgment (Plaintiff's Exhibit C) at 8,[2] and the Virginia Code defines "motor vehicle" for purposes of insurance requirements, *see* Va.Code § 38.1–21(A)(1) (1985 cum. supp.) (superseded), to include both a semi-tractor and a semi-trailer, the Court must independently determine the underinsured motorist coverage, if any, that was attached to the plaintiff's tractor and to the U.S. Lines Trucking trailer that it was pulling at the time of the accident.

#### 1. *The Plaintiff's Tractor*

■ The policy's schedule of coverages and covered autos recites that uninsured/underinsured motorist coverage is provided only to:

OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those autos you own which, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorists insurance. This includes those autos you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

Plaintiff's Exhibit C at 47; *see id.* at 5, 45.

The policy is unambiguous that for purpose of coverage a vehicle "owned" by the named insured does not include vehicles leased to the named insured and owned by another. *Compare* Description of Symbols 41–45 *with* Description of Symbol 47, Plaintiff's Exhibit C at 47. Because the plaintiff's tractor was not owned by U.S. Lines Trucking, the tractor was not a "covered auto" under the policy's uninsured/underinsured motorist endorsement.

■ Nor is uninsured/underinsured coverage imputed to the tractor under the policy by operation of the Virginia uninsured motorist statute. The statute in force at the time the Pennsylvania Insurance policy was issued or renewed provided:

No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle ... shall be issued or delivered by any insurer licensed in this Commonwealth upon any motor vehicle ... then principally garaged or docked or principally used in this Commonwealth ... unless it contains an endorsement or provisions undertaking to pay the insured[3] all sums which he shall be legally entitled to recover as damages from the owner or

---

**2.** Plaintiff's Exhibit C contains either a confusing copy of the policy or a copy of the confusing policy. In order to enable reference to the policy, the Court has consecutively numbered the pages contained in Exhibit C in blue ink on the lower left-hand side of each page. Exhibit C contains fifty-two pages. They are numbered one through fifty with one page marked number "29A".

**3.** The statute defined "insured" to include, *inter alia,* the named insured and "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies...." Va.Code § 38.1–381(c) (1985 cum. supp.) (superseded).

operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of § 46.1–1(8); provided, that such limits, after January 1, 1983, shall be equal to, but not exceeding, the limits of the liability insurance afforded by such policy, unless the insured rejects such additional uninsured motorist insurance coverage by notifying the insurer as provided in § 38.1–380.283. Va.Code §§ 38.1–381(a)–(b) (1985 cum. supp.) (superseded). Subsection 46.1–1(8) specified an ability to respond in damages for liability "in the amount of $25,000 because of bodily injury to or death of any 1 person and, subject to such limit for 1 person, in the amount of $50,000 because of bodily injury to or death of 2 or more persons in any 1 accident." Va.Code § 46.1–1(8) (1985 cum. supp.) (superseded).

Based on the language of the Virginia "omnibus clause" and the uninsured motorist provision which incorporates the omnibus clause language concerning applicability, the plaintiff argues that the policy issued to U.S. Lines Trucking by Pennsylvania Insurance was required to provide uninsured motorist coverage to the plaintiff as operator of his own tractor with the permission of U.S. Lines Trucking, the named insured, at the time of the accident. The Virginia Supreme Court, however, has determined otherwise.

In *American Motorists Insurance Co. v. Kaplan*, 209 Va. 53, 161 S.E.2d 675 (1968) the court stated that "[t]he omnibus statute § 38.1–381(a) does not require that coverage be afforded a permissive user of a non-owned vehicle. It only requires that the owner's policy extend coverage to a permissive user for liability 'resulting in the operation or use of such [owner's] vehicle'." 209 Va. at 58, 161 S.E.2d at 679 (bracketed "owner's" in original).

The case of *Bayer v. Travelers Indemnity Co.*, 221 Va. 5, 267 S.E.2d 91 (1980) is also instructive. In *Bayer*, the operator of an automobile repair shop was the named insured under an automobile liability policy which included an uninsured motorist endorsement. The policy insured two motor vehicles owned by the named insured and provided liability coverage to the named insured while permissively operating vehicles that he did not own.

While the named insured was road testing a vehicle which his shop had repaired and in which its owner was a passenger, the vehicle was struck by an uninsured vehicle. The owner-passenger in the repaired vehicle, also an uninsured vehicle, received injury. The owner-passenger attempted to obtain uninsured motorist coverage under the named insured operator's policy.

The court found that under the operator's policy, the vehicle being test driven, non-owned by the named insured, was not an "insured vehicle" and that the owner-passenger did not qualify as a "person insured." 221 Va. at 8, 267 S.E.2d at 92–93. Discussing uninsured motorist coverage, the court observed that "[i]n Virginia, uninsured motorist coverage is meant to protect an insured motorist, his family and permissive users *of his vehicle* against the peril of injury by an uninsured wrongdoer, not to provide 'insurance coverage upon each and every uninsured vehicle to everyone'." 221 Va. at 8, 267 S.E.2d at 93 (quoting *Nationwide Mutual Insurance Co. v. Harylesville Mutual Casualty Co.*, 203 Va. 600, 603, 125 S.E.2d 840, 843 (1962) (emphasis added).

At the time of the accident underlying this suit, the plaintiff was a permissive user of a tractor hired to but not owned or maintained by U.S. Lines Trucking, the named insured. Under these circumstances, the Virginia uninsured motorist statute does not impute uninsured/underinsured motorist coverage to the plaintiff's "tractor" under the Pennsylvania Insurance policy.

### 2. *U.S. Lines Trucking's Trailer*

■ As previously indicated, both the Pennsylvania Insurance policy and the Virginia Code consider a semi-trailer to be an independently insurable vehicle. Accordingly, the Court must determine whether the plaintiff is accorded underinsured motorist coverage on account of the U.S. Lines Trucking trailer attached to the

plaintiff's tractor at the time of the accident.

Under both the policy and the Virginia uninsured motorist statute, the automobile involved in the accident with the plaintiff was not "uninsured." [4] The question then is whether the Pennsylvania Insurance policy or the uninsured motorist statute provide the plaintiff "underinsured" motorist coverage. They do not.

### a. The Policy

Under the terms of the Pennsylvania Insurance policy, the U.S. Lines Trucking trailer did not carry either uninsured or underinsured motorist coverage that would be available to the plaintiff as a permissive operator of the tractor-trailer rig. The policy provides that only those vehicles owned by U.S. Lines Trucking "which, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorist insurance," are covered vehicles under the policy's uninsured/underinsured motorist endorsement. Plaintiff's Exhibit C at 47; *see id.* at 5, 45.

The parties stipulated that the trailer was owned by U.S. Lines Trucking. Final Pre–Trial Order at ¶ 4. As discussed below, the trailer was principally garaged in Virginia at the time the policy was issued or renewed. Virginia law, however, did not require that the trailer carry uninsured motorist insurance. While the Virginia uninsured motorist statute required that every liability insurance policy subject to the omnibus clause contain an uninsured motorist endorsement, Virginia law did not compel liability insurance on the U.S. Lines Trucking trailer. *See Reliance Insurance Companies v. Darden,* 217 Va. 694, 696, 232 S.E.2d 749, 750 (1977) ("Virginia is not a compulsory motor vehicle liability insur-

ance state"); Va.Code §§ 56–299—56–301 (1986) (motor vehicles requiring a permit or certificate of public convenience and necessity from the State Corporation Commission may discharge financial responsibility requirements by filing surety bonds or securities; liability insurance is not required); Va.Code §§ 46.1–167.1—46.1–167.7 (1986) (upon payment of specified fee, uninsured motor vehicles may be registered). Although U.S. Lines Trucking did in fact purchase a liability policy insuring the trailer, and, as discussed below, this policy was subject to the Virginia omnibus clause and uninsured motorist statute, Virginia law did not require U.S. Lines Trucking to purchase the policy. U.S. Lines Trucking could have fulfilled Virginia financial responsibility requirements without purchasing any insurance at all. Moreover, by statute underinsurance coverage could have been rejected even though a liability policy on the trailer was in fact purchased. *See* Va.Code § 38.1–380.2 B (1985 cum. supp.) (superseded). Accordingly, under the terms of the policy, the trailer is not a covered vehicle under the uninsured/underinsured motorist endorsement.

### b. The Uninsured Motorist Statute

At trial, the plaintiff testified that to the best of his knowledge, the trailer had been garaged at the U.S. Lines Trucking terminal in Norfolk, Virginia from the time that he began driving for U.S. Lines Trucking on July 8, 1985, eight days before the Pennsylvania Insurance policy was issued or renewed. Although the Court would be reluctant to accept this testimony by the plaintiff as conclusive, Pennsylvania Insurance admitted that its agent acknowledged Virginia uninsured motorist coverage pursuant to the policy, while not ac-

---

**4.** Under the policy, an uninsured motor vehicle is one for which *no* liability insurance applies at the time of an accident or for which an insurer denies coverage. Plaintiff's Exhibit C at 29–30. Under the uninsured motorist statute, an uninsured vehicle is one for which there is no liability insurance in the amount of $25,000 for bodily injury to any one person, $50,000 for bodily injury to two or more persons in any one accident, or where there is such insurance, but the

insurer denies coverage in writing. Va.Code § 38.1–381(c) (incorporating § 46.1–1(8)) (1985 cum. supp.) (superseded).

The owner and the operator of the automobile involved in the accident with the plaintiff *each* carried insurance providing $25,000/$50,000 of liability coverage. The underwriters of these policies have both indicated their willingness to pay up to the limit of liability under these policies.

knowledging or admitting any particular amount of coverage. Final Pre–Trial Order of ¶ 10; see Plaintiff's Exhibit A. Because the policy unambiguously does not provide uninsured motorist coverage to non-owned vehicles, the Court finds that the acknowledgment of Virginia uninsured motorist coverage more likely related to coverage on the trailer owned by U.S. Lines Trucking. Based on the plaintiff's testimony and the admission of Pennsylvania Insurance, the Court finds that the trailer involved in the accident was principally garaged in Virginia when the policy was issued or renewed.

Because the Pennsylvania Insurance policy was issued or renewed to cover liability arising from the ownership or use of a "motor vehicle" then principally garaged or principally used in Virginia and owned by the named insured, the policy is subject to the Virginia omnibus clause and the uninsured motorist statute. By operation of the statute, the policy must provide uninsured motorist coverage on the trailer. Underinsured motorist coverage, however, is not imputed to the policy by operation of the statute.

The uninsured motorist statute provided that, after January 1, 1983, the limits of uninsured motorist coverage required by the statute "shall be equal to, but not exceeding, the limits of the liability insurance afforded by ... [the] policy, unless the insured rejects such additional uninsured motorist coverage by notifying the insurer as provided in § 38.1–380.2 B 3." Va.Code § 38.1–381(b) (1985 cum. supp.) (superseded). The statute then continues: "[W]here such insured *contracts for such higher limits*, the endorsement therefor shall obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent such vehicle is underinsured...." [5] *Id.* (emphasis added). The statute is clear that, unless the insured contracts for certain higher limits, underin-

sured motorist coverage is not required by the statute. The question now is what are those "higher limits."

Subsection 38.1–380.2 B of the Virginia Code in force at the time the Pennsylvania Insurance policy was issued or renewed read as follows:

On and after January 1, 1983, no new or renewal policy, extension certificate or other written statement of coverage continuance and, no original or renewal premium notice of insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles shall be issued, delivered or rendered unless there is imprinted on, or is attached to the front thereof, or enclosed therewith, in boldfaced type, the following legend:

IMPORTANT NOTICE

IN ADDITION TO THE INSURANCE COVERAGE REQUIRED BY LAW TO PROTECT YOU AGAINST A LOSS CAUSED BY AN UNINSURED MOTORIST

IF YOU HAVE PURCHASED LIABILITY INSURANCE COVERAGE THAT IS HIGHER THAN THAT REQUIRED BY LAW TO PROTECT YOU AGAINST LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE OR USE OF YOUR MOTOR VEHICLES COVERED BY THIS POLICY, AND YOU HAVE NOT PURCHASED UNINSURED MOTORIST INSURANCE COVERAGE EQUAL TO YOUR HIGHER LIABILITY INSURANCE COVERAGE, THEN:

1. YOUR UNINSURED MOTORIST INSURANCE COVERAGE HAS INCREASED TO THE LIMITS OF YOUR LIABILITY COVERAGE AND THIS INCREASE MAY COST YOU AN EXTRA PREMIUM CHARGE; AND

2. YOUR UNDERINSURED MOTORIST INSURANCE COVERAGE

---

5. The statute provides that "[a] motor vehicle is underinsured when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of such vehicle, ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of such vehicle." Va.Code § 38.1–381(c) (1985 cum. supp.) (superseded).

HAS INCREASED TO THE LIMITS OF YOUR LIABILITY COVERAGE; AND

3. YOUR TOTAL PREMIUM CHARGE FOR YOUR MOTOR VEHICLE INSURANCE COVERAGE MAY INCREASE IF YOU DO NOT NOTIFY YOUR AGENT OR INSURER WITHIN 20 DAYS OF THE MAILING OF THE NEW OR RENEWAL POLICY, EXTENSION CERTIFICATE OR OTHER WRITTEN STATEMENT OF COVERAGE CONTINUANCE, OR THE ORIGINAL OR RENEWAL PREMIUM NOTICE, AS THE CASE MAY BE.

When the insured either rejects or within twenty days fails to reject such additional uninsured and underinsured motorist insurance coverage, then the insurer shall be relieved of the obligation imposed by this subsection to attach or imprint the foregoing legend to any subsequently delivered renewal policy, extension certificate or other written statement of coverage continuance or to any subsequently mailed premium notice.

Va.Code § 38.1–380.2 B (1985 cum. supp.) (superseded).

The Court finds that the language in subsection 38.1–381(b) triggering underinsured motorist coverage, namely, "where [the named] insured contracts for such higher limits," referred to the situation where two things have occurred: one, the named insured purchased greater liability coverage than that required by law and, secondly, the named insured has not rejected the uninsured/underinsured coverage apprised of by the mandatory notice. Otherwise, the wording of the notice statute

setting forth the specific statutory condition precedent to its operation—"IF YOU HAVE PURCHASED LIABILITY INSURANCE COVERAGE THAT IS HIGHER THAN THAT REQUIRED BY LAW"— would be superfluous. It is only when one has purchased liability insurance in limits higher than that required by law that the automatic underinsured motorist coverage occurs unless rejected. Accordingly, unless U.S. Lines Trucking purchased higher liability coverage on the trailer than that required by law, the Pennsylvania Insurance policy would not automatically be required to provide underinsurance coverage on the trailer by operation of the Virginia uninsured motorist statute.[6]

The plaintiff argues that the statutory language concerning liability coverage required by law should be construed to mean the minimum liability coverage that may be purchased on a particular type of vehicle under *Virginia law.* The Court declines to adopt this construction. If accepted, a liability policy on a motor carrier operating exclusively within Virginia providing only the coverage "required by law" would not be subject to the "automatic" Virginia uninsured/underinsured motorist coverage while a liability policy on a motor carrier principally garaged in Virginia but operating in interstate commerce would most likely be subject to the "automatic" Virginia coverage because federal law generally requires greater liability coverage on a motor carrier than does Virginia law.[7] The Court will not attribute such an intent to the General Assembly.[8]

---

**6.** No evidence was submitted at trial concerning whether the required notice was ever sent to U.S. Lines Trucking or whether U.S. Lines Trucking ever rejected additional uninsured/underinsured coverage. It is unnecessary, however, for the Court to determine what effect, if any, the insurer's failure to provide the notice would have on the policy's coverage or which party to the litigation carried the burden of proof on these issues.

**7.** Interstate carriers may be required by federal law to have up to $5 million of liability coverage, 49 C.F.R. § 1043.2(b)(2) (1985), but intrastate carriers in Virginia may not be required to have more than $500,000 of liability coverage. Va.Code § 56–300 (1986).

**8.** Accordingly, it is not necessary for the Court to consider whether interpreting the Virginia uninsured motorist statute to "automatically" require an insurance policy issued in New York and delivered in New Jersey to provide $1 million of underinsured motorist coverage on this trailer, principally garaged in Virginia but utilized in interstate commerce by an interstate motor carrier regulated by the ICC and involved in an accident in Delaware, would constitute an unconstitutional restraint on interstate commerce or would fall under federal preemption analysis. Issues of due process, equal protection, and the impairment of contract clause of the Constitution that may be attendant in such an interpretation also need not be discussed.

It is uncontested that the $1 million of liability coverage on the U.S. Lines Trucking trailer was mandated by ICC regulations promulgated under 49 U.S.C. section 10927. See 49 C.F.R. § 1043.2(b)(2)(c) (1985). The Pennsylvania Insurance policy purchased by U.S. Lines Trucking provided the liability coverage required by law on the trailer and no more. Therefore, the statutory language is not triggered and the policy does not provide underinsurance coverage on the U.S. Lines Trucking trailer by operation of the Virginia uninsured motorist statute.

### B. The Nationwide Policy

■ The plaintiff also seeks to "stack" underinsurance coverages on three vehicles owned by the plaintiff and insured under one policy by defendant Nationwide. The uninsured/underinsured coverages on the vehicles are $25,000/$50,000, $100,000/$300,000, and $25,000/$50,000.

Although Nationwide concedes that the plaintiff is entitled to the $100,000 coverage, it argues that the Nationwide policy contains the exact limitation of liability language that the Virginia Supreme Court found in *Goodville Mutual Casualty Co. v. Borror*, 221 Va. 967, 275 S.E.2d 625 (1981) to have clearly and unambiguously excluded "stacking" of uninsured motorist coverages on multiple vehicles under a single policy. The plaintiff argues that the statutory definition of underinsurance in subsection 38.1–381(c), added by the Virginia General Assembly after the *Goodville* decision, dictates a different result. The plaintiff cites two Virginia Circuit Court decisions in support of his arguments.

In *Billings v. State Farm Mutual Automobile Insurance Co.*, 680 F.Supp. 778 (E.D.Va.1988), this Court, by Judge Clarke, held that underinsurance coverages on three vehicles insured under a single policy could not be "stacked." In reaching this conclusion, the Court considered the statutory definition of underinsurance contained in subsection 38.1–381(c) and the Circuit Court cases relied upon by the plaintiff. The limitation of liability language contained in the policy at issue in *Billings* was substantively identical to the language con-

tained in the Nationwide policy at issue here. The Court finds that *Billings* controls this matter and that the plaintiff may not "stack" the underinsured motorist coverages contained in his Nationwide policy. Accordingly, the maximum amount of underinsurance coverage available to the plaintiff under the Nationwide policy is $100,000.

IT IS SO ORDERED.

